# EXHIBIT A

FILED 3/27/2026
14th CIRCUIT COURT
MUSKEGON COUNTY



2026-001385-CB
**CCR-SAC**
**NOT PROPOSED**

Original – Court
1st copy – Defendant

Approved, SCAO

| STATE OF MICHIGAN | | |
| --- | --- | --- |
| 14th **JUDICIAL DISTRICT** | | CASE NUMBER |
| 14th **JUDICIAL CIRCUIT** | **SUMMONS** | 2026-001385-CB |
| Muskegon **COUNTY** | | HON. KENNETH S. HOOPES |

Court address | Court telephone number
990 Terrace St, Muskegon, MI 49442 | (231) 724-6251

| Plaintiff's name, address, and telephone number | | Defendant's name, address, and telephone number |
| --- | --- | --- |
| Brandon Hooker<br>7367 Waterline Dr<br>Allendale, MI 49401<br>616-289-1313 | **v** | Comcast Cable Communications Management, LLC<br>c/o CSC-Lawyers Incorporating Service<br>3410 Belle Chase Way, Suite 600<br>Lansing, MI 48911 |
| Plaintiff's attorney bar number, address, and telephone number<br>Pro Se - Brandon Hooker<br>7367 Waterline Dr<br>Allendale, MI 49401<br>616-289-1313 | | |

Instructions: Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

It was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk | |
| --- | --- | --- | --- |
| 03/27/2026 | 06/26/2026 | *Karen D. Buie* | 03/27/2026 11:01 AM |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

KAREN D. BUIE - MUSKEGON COUNTY CLERK
PROXY SIGNED BY: JARVISCH



## STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

**BRANDON HOOKER,**

   Plaintiff,

vs.

**COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, d/b/a COMCAST,**

   Defendant.

Case No.: ___2026-001385-CB___

Hon.: ___KENNETH S. HOOPES___

### COMPLAINT FOR VIOLATION OF THE MICHIGAN WHISTLEBLOWERS' PROTECTION ACT (MCL 15.361 ET SEQ.) AND WRONGFUL DISCHARGE

### JURISDICTION AND VENUE

1. This action is brought pursuant to the Michigan Whistleblowers' Protection Act (WPA), MCL 15.361 et seq., which provides a civil cause of action for employees subjected to retaliation for reporting or being about to report a violation of law to a public body.

2. This Court has jurisdiction pursuant to MCL 600.605. The amount in controversy exceeds $25,000.00.

3. Venue is proper in Muskegon County pursuant to MCL 600.1621 because Plaintiff resided and worked remotely from Muskegon County, Michigan during his employment with Defendant, and the retaliatory conduct giving rise to this action occurred within the scope of that employment.

### PARTIES

4. Plaintiff Brandon Hooker is an individual who resides in Muskegon County, Michigan. Mr. Hooker was employed by Defendant for approximately twenty (20) years, most recently as a Specialist 2 / Construction CMO Coordinator in the Heartland Region, working remotely from the Norton Shores / Allendale, Michigan area.

5. Defendant Comcast Cable Communications Management, LLC, d/b/a Comcast, is a foreign limited liability company authorized to do business in Michigan, identified by

Michigan LARA as Entity No. 801871637. Defendant may be served through its resident agent, CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Suite 600, Lansing, MI 48911. Comcast is an "employer" within the meaning of MCL 15.361(b).

## FACTUAL ALLEGATIONS

### A. Background

6. Mr. Hooker was employed by Comcast for approximately twenty (20) years and maintained a consistent record of satisfactory performance. His most recent annual performance review (December 31, 2025) rated him "Effective" overall — the standard passing rating — while simultaneously and contradictorily noting "Off Track" sub-ratings in certain categories, a pattern inconsistent with any legitimate performance concern and indicative of pretext.

7. In his role as CMO Coordinator, Mr. Hooker was responsible for coordinating construction survey tasks, verifying job site conditions, and ensuring Comcast's construction processes complied with established standard operating procedures. His work required independent professional judgment about when surveys were required for proper verification.

### B. Targeting by Rob Robinson — November 2025

8. Beginning in November 2025, Rob Robinson ("Robinson"), Central Division Leader, targeted Mr. Hooker on at least three (3) occasions, resulting in a verbal warning. Robinson is the subject of the formal complaints described herein.

9. Robinson publicly shared a meme ("Apes Together Strong") directed at Mr. Hooker in the workplace on or about November 14, 2025, constituting inappropriate and targeted conduct by a director toward a subordinate.

10. Robinson repeatedly and publicly contradicted Mr. Hooker's professional judgment on construction survey tasks, including publicly directing Mr. Hooker to cancel a properly required survey in a group chat visible to colleagues.

### C. First Protected Complaint — December 2, 2025

11. On December 2, 2025, Mr. Hooker filed a formal complaint through Comcast's Employee Accountability System (EAS), reporting Robinson's targeted conduct and violations of Comcast's anti-harassment, anti-retaliation, and Conflicts of Interest policies.

12. On that same date, Robinson — the subject of the complaint — publicly directed Mr. Hooker in a group Chatter chat to cancel a construction survey task, contradicting Mr. Hooker's documented SOP judgment. Mr. Hooker pushed back publicly and notified EAS Representative Ty Hurd of this real-time targeting in writing.

13. EAS Representative Ty Hurd investigated and concluded "nothing wrong" had occurred. During the process, Hurd told Mr. Hooker he was "overreacting" and instructed him to

comply with the director. This finding was made despite documented evidence, and targeting intensified thereafter.

### D. Second Protected Complaint — December 19, 2025 (Case No. 984196686501)

14. On December 19, 2025, Mr. Hooker filed a second formal complaint (Case No. 984196686501) through Comcast's Comcast Listens program, naming both Robinson and Pete Rosa ("Rosa"), Mr. Hooker's direct manager, as subjects of the complaint. The complaint documented ongoing targeting, selective enforcement, and retaliation spanning 10-12+ documented incidents.

15. Examples of selective enforcement included: (a) Mr. Hooker was individually contacted and disciplined for estimates and stuck-address issues that affected multiple employees — none of whom were contacted; and (b) Mr. Hooker was singled out regarding the meme while other employees were not.

### E. Conflict of Interest — Brian Brown's Compromised Investigation

16. Employee Relations Supervisor Brian Brown ("Brown") was assigned to oversee the second investigation. Brown admitted to Mr. Hooker that he personally knows both Pete Rosa and Rob Robinson — the subjects of the complaints. Despite this acknowledged conflict of interest, Brown dismissed Mr. Hooker's recusal request at least four (4) times and continued to supervise his direct report, Simone Thorpe, in her investigation of the individuals Brown personally knew.

17. Comcast's Conflicts of Interest Policy (Policy No. 1061, Section 4.1.4) requires employees to recuse themselves from decisions involving persons with whom they have a personal relationship that could affect or appear to affect their objectivity. Brown's failure to recuse himself, and Comcast's failure to enforce this policy, constitutes a violation of a rule or regulation within the meaning of MCL 15.362.

### F. Protected Activity: Report of Suspected Violation / About to Report to a Public Body

18. Mr. Hooker's formal internal complaints reported suspected violations of law and regulation, including: (a) violations of the Michigan Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 et seq., prohibiting workplace harassment and retaliation based on protected characteristics; (b) violations of Comcast's Conflicts of Interest Policy adopted in compliance with federal regulatory and ethics requirements governing publicly regulated entities; and (c) violations of Comcast's anti-retaliation policy, breach of which by a regulated company is reportable to the Equal Employment Opportunity Commission (EEOC) and the Michigan Department of Civil Rights (MDCR).

19. Comcast's own Employee Handbook expressly acknowledges that employees may report suspected violations of law to governmental agencies, including the EEOC and agency Inspectors General, without prior authorization. At the time of his termination, Mr. Hooker was about to escalate his complaints to the EEOC and/or MDCR — public bodies within

the meaning of MCL 15.361(d) — in the event Comcast's internal processes failed to address the ongoing retaliation.

20. The WPA protects employees who are "about to report" a suspected violation of law to a public body. MCL 15.362; Shallal v Catholic Social Servs, 455 Mich 604, 620-621 (1997). Mr. Hooker's engagement of legal counsel, his exhaustion of internal remedies, and his documented statement of intent to escalate constitute clear and convincing evidence of imminent intent to report to a public body.

## G. Adverse Action — Termination January 27, 2026

21. On January 27, 2026 — eighteen (18) days after Mr. Hooker's January 8, 2026 documented complaint memorialization — Comcast terminated Mr. Hooker's employment.

22. The termination was announced by Robinson — the subject of the pending complaints — to approximately seventy-nine (79) colleagues, without advance notice to Mr. Hooker.

23. When Mr. Hooker requested the business reason for his termination in writing, HR Director Katie Staples was unable to articulate a business reason and refused to provide one in writing. No written business justification has ever been provided.

24. Comcast offered Mr. Hooker a severance of $5,439.72 — approximately 2.75 weeks of pay for a twenty-year employee — conditioned on execution of a release. Mr. Hooker has not signed the severance agreement.

## H. Post-Termination Retaliation During Notice Period

25. Following his termination, Mr. Hooker remained in a notice period through March 2026. During this period, Pete Rosa — the subject of Mr. Hooker's complaints — contacted Mr. Hooker three (3) times within six (6) minutes on February 5, 2026, regarding time entry, despite having full manager system access to verify the information himself. The contacts contained contradictory instructions.

26. Rosa obstructed Mr. Hooker's access to his own vacation balance during the final weeks of employment, requiring Mr. Hooker to submit an IT ticket and provide screenshot documentation despite Rosa having full managerial system access to the information.

## COUNT I VIOLATION OF THE MICHIGAN WHISTLEBLOWERS' PROTECTION ACT (MCL 15.362)

27. Plaintiff incorporates by reference paragraphs 1 through 26 as if fully set forth herein.

28. At all relevant times, Mr. Hooker was an "employee" and Comcast was an "employer" within the meaning of MCL 15.361.

29. Mr. Hooker engaged in protected activity within the meaning of MCL 15.362 by: (a) reporting suspected violations of law, regulation, and rule through Comcast's designated

internal complaint process on December 2, 2025 and December 19, 2025; and (b) being about to report such violations to the EEOC and/or MDCR, public bodies within the meaning of MCL 15.361(d), having exhausted Comcast's internal remedies and engaged legal counsel.

30. Comcast, through Robinson, Rosa, and Brown, had actual knowledge of Mr. Hooker's protected activity prior to his termination.

31. Comcast discharged Mr. Hooker on January 27, 2026, constituting an adverse employment action within the meaning of MCL 15.362.

32. The eighteen (18) day interval between Mr. Hooker's documented complaint activity and his termination establishes a compelling inference of causation. Michigan courts recognize that close temporal proximity between protected activity and adverse action supports the causal element of a WPA claim.

33. The causal connection is independently supported by: (a) the termination was announced by Robinson, the subject of the pending complaints; (b) Comcast provided no articulable or written business justification; (c) Mr. Hooker held a satisfactory "Effective" performance rating; (d) Brown's conflicted supervision compromised the investigation; and (e) the documented pattern of 10-12+ escalating retaliatory incidents between December 2025 and January 2026.

34. Comcast's violation was willful within the meaning of MCL 15.365.

35. As a direct and proximate result, Mr. Hooker suffered lost wages, lost benefits, lost seniority, emotional distress, and other compensatory damages in an amount to be determined at trial.

## COUNT II WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

36. Plaintiff incorporates by reference paragraphs 1 through 35 as if fully set forth herein.

37. Michigan recognizes a common law cause of action for wrongful discharge where termination contravenes a clearly established public policy. The ELCRA, MCL 37.2101 et seq., establishes a clear public policy prohibiting retaliation against employees who report workplace harassment and discriminatory conduct.

38. Mr. Hooker was terminated because he reported conduct he reasonably believed violated the ELCRA, in contravention of that public policy.

39. As a direct and proximate result, Mr. Hooker suffered the damages described above.

## COUNT III RETALIATION UNDER THE ELLIOTT-LARSEN CIVIL RIGHTS ACT (MCL 37.2701)

40. Plaintiff incorporates by reference paragraphs 1 through 39 as if fully set forth herein.

41. Mr. Hooker engaged in protected activity under ELCRA by reporting workplace harassment and targeting through Comcast's internal EAS and Comcast Listens programs.

42. Comcast retaliated against Mr. Hooker for this protected activity by terminating his employment and subjecting him to ongoing adverse treatment during his notice period.

43. As a direct and proximate result, Mr. Hooker suffered the damages described above.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Brandon Hooker respectfully requests that this Court enter judgment in his favor and against Defendant Comcast, and award:

(a) Reinstatement or, in the alternative, front pay;

(b) Back wages, benefits, and all compensation lost from January 27, 2026 through judgment;

(c) Full reinstatement of fringe benefits and seniority rights;

(d) Actual and compensatory damages, including emotional distress;

(e) Costs of litigation, including reasonable attorney fees and witness fees, pursuant to MCL 15.364;

(f) Civil fines pursuant to MCL 15.365;

(g) Such other and further relief as this Court deems just and equitable.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

Brandon Hooker, Pro Se Plaintiff

Norton Shores / Allendale, Michigan

Phone: 616-289-1313

Email: brandon7hooker@gmail.com

Dated: 3/27/26

## VERIFICATION

I, Brandon Hooker, declare under penalty of perjury that I have read the foregoing Complaint and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Brandon Hooker

Dated: 3/26/26

Natasha Shepard
March 26, 2026

NATASHA SHEPARD
Notary Public, State of Michigan
County of Ottawa
My Commission Expires 02/08/2028
Acting in the County of Ottawa